## C. J. FISHEL *v.* GEO. A. TURNER.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED DECEMBER 27, 1900.            DECIDED MAY 8, 1901.

FREAR, C.J., GALBRAITH, J., AND H. A. BIGELOW, ESQ., OF THE
BAR, IN PLACE OF PERRY, J., DISQUALIFIED.

A Circuit Judge of one Circuit may enforce specific performance of a
contract to convey land situated in another Circuit.

The memorandum or note required by the statute of frauds to be in
writing may be in the form of one or more receipts or letters.

Parol evidence is admissible to locate the land referred to in the
written memorandum of the contract.

When the terms of a contract within the statute of frauds are set
forth in several writings all of which are signed by the party to
be charged, such writings need not refer to each other. It is
sufficient if they all refer to the same transaction as shown by
internal evidence and coincidences through inspection and com-
parison.

Where the evidence shows a complete contract all the proved terms of
which are in writing signed by the party to be charged, it is not
to be presumed that there were other terms not found in the
writing.

A contract to convey may be enforced though the form of the deed is
not specifically agreed upon, and though the wife of the vendor is
not bound to release her inchoate right of dower.

OPINION OF THE COURT BY FREAR, C.J.

(Galbraith, J., dissenting.)

This is a suit in equity for specific performance of an agreement to convey certain lands situated at Olaa in the island of Hawaii.

The defendant first moved to dismiss the cause on the ground that the subject matter of the suit was without the jurisdiction of a Circuit Judge of the First Circuit, because the land in question was situated in the Fourth Circuit. This motion was properly overruled. Under our statutes a Circuit Judge of one Circuit may entertain jurisdiction of a suit of this nature although the land in question is situated in another Circuit and although service is made, as was the case here, upon the defendant in such other Circuit. *Malani v. Alapai*, 13 Haw. 193. Irrespective of the statute a Circuit Judge of one Circuit would have jurisdiction in a case of this kind if service was made in such Circuit, though the land were situated in another Circuit, for the court would have merely to enforce performance against the person and would not be required to act upon the land at all.

The defendant next demurred on several grounds. The demurrer was submitted without argument and was overruled. No reason for sustaining it has been called to our attention.

Lastly the defendant answered, setting up as his only defense the statute of frauds, and the vital question in the case is whether there was a sufficient memorandum or note of the agreement in writing signed by the party to be charged. The Circuit Judge after a hearing on the evidence ordered specific performance.

The plaintiff proved that in the early part of November, 1897, at Hilo, Hawaii, the plaintiff agreed to purchase of the defendant and the defendant to sell to the plaintiff, for $1,000 plus $3 per acre, lots 355, 356 and 357 in the Olaa Coffee Reservation, the conveyance to be made upon the defendant's obtaining a deed or patent of the land from the government. The defendant had not then applied for the land but as he had at that time

only 60 acres, or more accurately 59.06 acres, he was entitled under the law to apply for 140 additional, or more accurately 140.94, the area of the lots in question. The parties seem to have spoken of these tracts in round numbers as the 60 and 140 acre tracts respectively. The defendant afterwards applied for the land and in due time obtained a patent therefor. The plaintiff made payments from time to time on account of the purchase price as requested by the defendant until he had paid $1,138.64 and finally, when the defendant had obtained the patent, tendered him the balance and asked for the deed. This the defendant refused to give because the plaintiff would not assume or guarantee a certain debt owing by the defendant's wife to certain creditors in San Francisco—a matter wholly disconnected from the land transaction.

The agreement as above set forth was proved by undisputed evidence. The defendant introduced no evidence. He relied entirely on the assumed inability of the plaintiff to show a compliance with the statute of frauds. Under our statute the consideration need not be set forth in the writing. There being no evidence that the contract contained any other terms than those set forth above and the consideration not being required to be set forth in writing, the question is whether the terms above mentioned other than the consideration were put in writing and signed by the defendant. The contract itself need not be in writing. It is sufficient if there is some memorandum or note of it in writing. This may be made afterwards. It may be in the form of one or more receipts or letters.

On November 8, 1897, the defendant gave the plaintiff a receipt as follows:

"$294.30.                    Nov. 8th, 1897.

Received from Chas. J. Fishel Two Hundred and Ninety-four & 30-100 Dollars % purchase price Lots 355, 356 & 357 Olaa, as per agreement.
                    (Sig.)                    GEO. A. TURNER."

This would be a sufficient memorandum (see *Studds v. Watson*, L. R. 28 Ch. Div. 305) but for the fact that the evidence

shows that there was one term (other than the consideration) not set forth, namely, that the deed was to be given only when the patent was obtained. But this term is found in a letter to the plaintiff signed by the defendant dated January 27, 1898, containing the following language:

"Well now about land matters, I have just been up to see Mr. Baldwin in regard to it, and he has promised to go up to the place some time this week and look at it and the nursery I have started, and if I have the amt. cleared, and the nursery looks as though I mean business, there will be no difficulty. He has given me to so understand. The balance of purchase price on the two lots will be, on my 60 acres $270.00, on your 140 $315.00, making a total of $585.00. This amt. has to be paid upon application for a clear title deed. Will make the application for it just as soon as you can arrange it for me to do so. If you forward the amt. per next "Kinau" will arrange everything so as to cause no delay. Will see Mr. Peck as soon as he comes in town, probably Saturday, as he generally comes in the last of the week when he comes at all. Will execute deed to you, the moment I receive same from the Gov'mt."

There is much reason to believe that this portion of the letter of January 27 is in itself a sufficient memorandum—on the theory that the land, "your 140" acres, which is the only matter, other than the consideration, as to which there could be any doubt, could be identified or located by parol evidence. For, to what land could the defendant have referred but to the only land that so far appears would answer the description of "140 acres," "your" land, land for which a patent was to be obtained by the defendant from the government and which the defendant had agreed to sell and convey to the plaintiff? But if there is any doubt upon this point, all that is required is to connect this letter with the receipt of November 8, in which the lots are specifically described.

The general rule is that in cases of this kind detached unsigned writings in order to be connected with signed writings must be referred to in the signed writings, but that if all the writings are signed it is sufficient if they all refer to the oral agreement, and that whether they do refer to the same oral

agreement or transaction may be determined by internal evidence and coincidences, through inspection and comparison. *Thayer v. Luce*, 22 Oh. St. 62.

Attention has already been called to the fact that the letter gives the area of the land as 140 acres; that it speaks of it as "your" land; that it indicates that it is land for which a patent is to be obtained from the government and land which the defendant had agreed to sell to the plaintiff, all which is found to be true of the land mentioned in the receipt. Further, the letter and receipt are two of a series of letters and receipts all of which are more or less interwoven by references to each other or to the same matters which appear to be connected with this land or transaction, and there is no other land or transaction in evidence to which they could be taken to refer. These receipts and letters are dated Nov. 8 and 16, and Dec. 16 and 18, 1897, Jan. 24 and 27, Feb. 10 and May 16, 1898. Among the matters and persons thus referred to are the "land," the "coffee land," the "purchase price," "% agreement," "Olaa," "my 60 acres," the clearing of the land, the time required for clearing, the making of a nursery, Mr. Baldwin, agent for government lands at Hilo, Mr. Peck, through whom the balance of the purchase price was tendered, &c., &c. For instance, in this very letter of January 27 the defendant referred to Mr. Baldwin and wrote in connection with the 140 acre tract that he would see Mr. Peck, and in the next letter he wrote that he had seen Mr. Peck and that the latter handed to him "the enclosed paper which Mr. Baldwin made out for him showing amt. paid on Olaa lots, also amt. due," &c. And "the inclosed paper" begins: "Geo. A. Turner, Olaa Lots. Paid $294.30," which is the amount of the receipt of November 8. The fact that there was no evidence of any other land transaction between these parties also supports the view that these receipts and letters refer to the transaction in question. See *Beckwith v. Talbot*, 95 U. S. 289; *Lerned v. Wannemacher*, 9 Allen 412. See also in addition to cases *supra* on this general subject, *Cave v. Hastings*, L. R. 7 Q. B. D. 125; *Long v. Millar*, L. R. 4 C. P. D. 450.

There may, of course, have been other terms in the oral contract of which there is no evidence and which are not set forth in any of the writings signed by the defendant, but that may be so theoretically in any case. Proof having been made of sufficient terms to constitute a complete contract and all such terms being found in writings signed by the defendant, it is incumbent on the defendant to show that there were other terms not embodied in the writings, if he relies on that as a defense. There were, it is true, other matters referred to in some of the letters in question and in several other subsequent letters but there is nothing to indicate that they had anything to do with this transaction. On the contrary the indications are that they were entirely distinct. It is true also that it does not appear what, if any, agreement was made as to the form of the deed to be given or as to whether the defendant's wife was to join in the deed. In the absence of evidence to the contrary the inference would be that nothing was said as to these matters. This, however, would not prevent the enforcement of specific performance. The form of the deed in such case would be determined by the law and of course the wife could not be compelled to join but the husband might be compelled to convey as far as he could, at the plaintiff's option. As matter of fact the decree was merely that the defendant should convey "his right, title and interest" in the property in question. Presumably the plaintiff is satisfied with this. His counsel doubtless drafted the decree and he does not appeal from it.

The decree appealed from ordering specific performance is affirmed.

*Hatch & Silliman* and *J. A. Magoon* for plaintiff.

*F. W. Hankey* for defendant.

### DISSENTING OPINION OF GALBRAITH, J.

I am not able to assent to the doctrine announced in the majority opinion particularly that concerning the principal and last proposition discussed i. e. the sufficiency of the memoranda recited to take the agreement out of the operation of the statute

of frauds. This opinion forcibly illustrates the simplicity and effectiveness of a system of "inference, reference and comparison" in revivifying and reanimating an uncertain and indefinite contract and also shows how the operation of the system results in setting aside and annulling a statute by a judicial decision.

The statute provides that "No action shall be brought and maintained" * * * "Upon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them." * * * "Unless the promise, contract or agreement, upon which such actions shall be brought, or some memorandum or note thereof, shall be in writing, and be signed by the party to be charged therewith," etc. (Civil Laws 1897, Sec. 1314.)

It is not contended that the contract sued on was in writing but it is held that the memoranda recited are sufficient to take it out of the operation of the statute. In other words that while the contract is of such a character that it is incapable of enforcement on account of this statute the receipt and the letter contain all the essential elements of the contract and are sufficient to authorize the court to order specific performance of the contract in spite of the statute.

The correctness of this decision must be determined by the law as announced by the authorities.

"The general rule is that the memorandum must contain all the material terms of the contract." Brown, Statute of Frauds, p. 71.

The memorandum relied on "must contain such words as will enable the court, without danger of mistake, to declare the meaning of the parties. It must obviate the necessity of going to parol testimony, and relying in treacherous memory, as to what the contract itself was." *Scarritt v. St. John's M. E. Church*, 7 Mo. App. 178.

Another test is, "If specific performance is sought, the terms of the contract must appear with sufficient certainty to enable the chancellor to make a definite decree." *Oakman v. Rogers*, 120 Mass. 214.

The United States Supreme Court says, "Unless the essential terms of the sale can be ascertained from the writing itself, or by reference in it to something else, the writing is not a compliance with the statute; and, if the agreement be thus defective, it cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute was intended to prevent." *Williams v. Morris,* 95 U. S. 456.

I take it that the members of the court practically agree as to the law governing in this case and that the principal point of difference is as to the proper application of the law to the facts.

Now what was this alleged oral contract between plaintiff and defendant relative to the sale of the land? The plaintiff's statement of the nature and contents of the agreement in his direct examination was as follows: "I was up in Hilo a year ago last November to look after some coffee lands, and one day, walking out with Mr. Turner, he spoke about different subjects. At last he spoke about coffee lands and I told Mr. Turner I had about 160 acres of land up there and was looking for more. And Mr. Turner said that he had 60 acres of land there under Right of Purchase Lease and that *he would be willing to sell his 140 acres provided he could get sufficient money to improve his 60 acres; he would be willing to sell his application for 140 acres provided he could get sufficient money to improve his 60 acres first* which he was in duty bound in different conditions to the government; and *I asked him what he would take for his 140 acres* and he said he didn't know. *I said "will you take $1,000. for it."* I told him at the time that I had to pay $1,500. for 160 acres. *And he said "yes I will take $1,000. provided you pay for the land."* That made $1,420. all told. We agreed upon that and a few days after I went to his office and gave Mr. Turner $294.30 and Mr. Turner gave me this receipt." The receipt reads as follows:

"$294.30.                                    Nov. 8th, 1897.

Received from Chas. J. Fishel Two Hundred and Ninety-four & 30-100 Dollars % purchase price Lots 355, 356 and 357, Olaa, as per agreement.

(Sig.)                          GEO. A. TURNER."

The plaintiff further testifies that Olaa is in Hilo while the records show it to be in Puna.

On cross-examination the plaintiff testifies as follows:

"Q. Have you ever had possession of that land, Mr. Fishel?
"A. No sir.
"Q. Under this contract?
"A. No sir.
"Q. Have you ever seen it?
"A. No sir, I have not seen the land.
"Q. When was the contract made between you and Mr. Turner?
"A. In the month of November, 1897.
"Q. Was that contract in writing?
"A. In the shape of a receipt.
"Q. In the shape of which receipt?
"A. The shape of the first receipt, $294.30, the first payment." * * * also
"Q. What were the terms of payment, were they in writing or oral?
"A. Oral, and the receipt, that is all." (See transcript of testimony.)

I don't know, from this testimony, whether Turner agreed to sell and Fishel to buy 140 acres of land, that Turner did not own, or whether it was only the right to apply to the government for title to the 140 acres that was the subject of the agreement. If this last be true the court is not ordering specific performance of the contract made by the parties and if the former the agreement is not capable of being enforced.

There is nothing in the original agreement by which the court or any one else can determine with certainty whether Turner owns 200 acres, 140 acres or 60 acres, nor by what title he holds the land outside of the 60 acres held by right of purchase lease, nor where what he does own is located. Fishel says that he told Turner that "he had 160 acres of land *up there*" and Turner said that "he had 60 acres of land *there*." Whether "up there" and "there" refer to Hilo, Puna, Kona, Hamakua or to any place on the earth or above the earth the terms of the contract do not enlighten us.

What reference does the agreement make to "Lots 355, 356

and 357 Olaa," or in what way does the receipt identify the original agreement? There was nothing in the agreement, as given by Mr. Fishel, about obtaining a Patent, nor any thing from which one could infer that the title to the 140 acres—the subject of the contract—was at that time in the government. Turner referred to it as "my 140 acres" and Fishel did the same when he asked what will you take for "your 140 acres." Again no time being specified for the payment of the purchase price or the delivery of the deed. The presumption would arise that the deed was to be executed and delivered at once or within a reasonable time from the date of the contract and that all of the purchase price would be paid in cash on the delivery of deed. We learn from the opinion of the court that this was not the fact: that the purchase price was to be paid as Turner might demand it and that a deed was not to be delivered until after a patent for the land was issued to Turner at some indefinite and uncertain date in the future.

The opinion of the court says that "If all of the writings are signed it is sufficient if they all refer to the same oral agreement, and that whether they do refer to the same oral agreement or transaction may be determined by internal evidence and coincidences, through inspection and comparison." What "internal evidence" there may be in this receipt or the letter of January 27th to connect the one with the other, or either or both with the original agreement, I have been unable to discover either by inspection or comparison. I am led to the conclusion that it is absolutely necessary to resort to parol testimony in order to connect them.

It is doubtful if the terms of the original agreement as testified to by a plaintiff are sufficiently definite and certain to be the subject of a decree of specific performance in a court of equity provided they had been reduced to writing and signed by the party to be charged. This being true it is very difficult to understand how the court can take the receipt and letter—less definite and certain than the original agreement—and figure out an enforcible contract. It is clear to my mind that the re-

ceipt and letter do not contain all of the essential elements of the contract or of any contract; that considering these alone the chancellor cannot, without danger of mistake, make a definite decree; that to enable the court to figure out the terms of an intelligible contract a resort must be had to parol testimony to supply some of the material terms thereof and that to permit this is to permit the continuance of the very evil that the statute of frauds was intended to prohibit and remedy.

I am firmly convinced that the decree of the Circuit Court appealed from ought to be reversed and the bill dismissed.