## EMILIA VIEIRA OLIVEIRA *v.* MARIA VIEIRA SILVA AND ANTONE JOAQUIN SILVA.

APPEAL FROM CIRCUIT JUDGE, FOURTH CIRCUIT.

ARGUED JANUARY 22, 1908.     DECIDED FEBRUARY 10, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

JUDGE—*disqualification of.*

A judge is not disqualified in a case by having gratuitously advised the defendants' agent that he was doubtful whether the defendants were liable to the plaintiff on their bond given to her by them for a deed, the agent saying that the plaintiff had not performed her part of the agreement.

ID.—*appearance.*

General appearances made for the defendants by attorneys engaged by their attorney-in-fact authorized to "do and transact all and every kind of business of what nature and kind soever," upon whom, in the absence of the defendants from the Territory, service had been made, is a waiver of any objection to the service. In the absence of evidence that the defendants did not ratify or acquiesce in the engagement of their attorneys the proceedings will not be vacated on the ground of their unauthorized appearances

ID.—*pleadings—enforcible contract.*

The bill as amended shows an enforcible contract, and not merely an unaccepted offer, by averring an agreement between the parties whereby the defendants should purchase certain land and hold it as the property of the plaintiff and defendants jointly using the profits for cultivating it towards payment of the purchase money and should convey the land to the plaintiff for $410, of which sum $200 was paid and the balance tendered and refused on the ground that the defendants had in their possession money of the plaintiff sufficient to pay the same.

ID.—*frauds, statute of.*

A bond entitled "Bond for Deed," given to the plaintiff by the defendants requiring them to pay her $820 if they should not by a certain date convey certain land to her on her payment to them

of $410 is a sufficient memorandum of an agreement to comply with the statute of frauds and is supported by certain letters of the defendants evidently referring to the agreement.

OPINION OF THE COURT BY HARTWELL, C.J.

This is an appeal from a decree requiring the defendants to convey certain land to the plaintiff and adjudging that the plaintiff receive from the defendants the sum of $3681.29 with costs. The decree sets forth that it appears from the record that the defendants had contracted with the plaintiff to convey the land to her upon her payment to them of the sum of $410 and to give her free access to and full control of the land and that she should be entitled to its products; that a written memorandum of the contract was contained in a bond for a deed executed by the defendants April 28, 1900; that it further appeared from the record that the defendants were, and at all times since the making of the contract had been, in possession of the land and had received all of its rents, income and profits; that the defendant Maria Silva then was, and since July 1, 1903, had been, seized of the fee simple title to the land; that the plaintiff in the year 1900 offered to pay the defendants the sum of $410 in consideration of the conveyance of the land, which offer was refused by the defendants; that thereafter the plaintiff paid to the defendants the sum of $200 in part payment of said sum of $410; that the defendants refused to accept from the plaintiff the balance of the purchase price; that it further appeared from the record and the master's report, appointed to take and state the accounts between the parties, that since April 28, 1900, the defendants had received as rents, income and product from the land the sum of $2997.50 and expended thereon the sum of $25.60, chargeable to the plaintiff, and that the defendants were chargeable for interest upon the sums received by them from time to time belonging to the plaintiff, amounting to $919.39.

The defense is that no jurisdiction over the defendants was obtained by service on their agent when they were absent from

the Territory; that the bill shows no contract of sale but merely the defendants' offer, not averred to have been accepted by the plaintiff, and therefore that the defendants' general demurrer ought to have been sustained; that there was no evidence of a contract in writing or some memorandum thereof signed by the defendants to comply with the statute of frauds and that the judge was disqualified from sitting in the case because, when consulted at the defendants' request by their agent in 1903 or 1904, he gratuitously advised the agent that upon the statement that the defendants had not taken possession of the land or collected the rents and that the plaintiff "had absolutely not complied with the agreement set forth in the bond," he doubted "whether an action could be brought to recover the penalty in this bond." When the matter was called to his attention July 1, 1907, several months after issue had been joined, he stated that he had no recollection of it, that "even if recalled it could create no bias, actual or implied, on the part of the court against the defendants," and under the decision in *Notley v. Brown,* 17 Haw. 393, denied the motion to recuse for disqualification.

(1) The defendants' objection to the judge was not presented until over a year after the bill was filed, during which time he had heard and passed upon several motions and upon the demurrer, they meanwhile knowing the alleged cause of the disqualification. It is submitted by the defendants without argument that the decision in *Notley v. Brown,* under which the judge felt that he could not refuse to sit, "was erroneous and should be overruled." There is nothing in the facts shown in this case which would disqualify the judge if the law had not been settled, as it has been, in *Notley v. Brown* and subsequent decisions.

(2) The following are the facts bearing upon the defendants' claim that the service upon their agent was insufficient to give jurisdiction over their persons: The bill was filed August 27, 1906, the officer's return showing that each of the

defendants being in California he served the writ by leaving copies thereof, with the attached bill of complaint, with Carvalho who was agent and transacting the business of each of the defendants, at the same time showing him the original. September 4 the defendants' attorney filed a demurrer which was argued November 23 and sustained. December 29 the plaintiff was allowed until January 8 to file an amended bill. December 31 the defendants moved to set aside the order extending time and, the motion being denied, filed a demurrer to the amended bill January 10 which was argued February 19 and overruled; February 23 they filed a demand upon the plaintiff for particulars and March 20 their answer, verified by Carvalho, their attorney-in-fact, denying the agreement or the receipt of $200 and pleading the statute of frauds.

The affidavit of the attorney-in-fact, filed June 27 in support of a motion for continuance, shows that he had written to the defendants to come and that they answered that the defendant Maria Silva was sick and unable to stand the journey; that June 24 he cabled Silva to come by first steamer but received no answer and expected them at least by July 25.

The judge heard the case upon testimony presented on both sides and finding that the contract had been proved ordered an accounting and made a decree to that effect August 6, 1907, from whch the defendants appealed to this court. October 3 the appeal was dismissed for want of prosecution. August 26 a master was appointed to take the accounting. October 10 the defendants appeared specially with a motion to vacate the decree of August 6 and all orders, judgments, rulings and decisions in the cause and that the summons and service be quashed on the ground that Carvalho was not authorized to accept service; that his authorization was only that of attorney-in-fact with special powers to collect rents, institute actions to collect them and lease lands under his power of attorney of April 21, 1904, filed with the motion. The affidavit of each defendant that Carvalho had no authority to accept service was

filed with the motion. October 11 and 12 they both appeared before the master and contested the accounting and October 15 to contest the plaintiff's motion to confirm the master's report. The motion to quash was presented October 18 and denied. All the appearances, except in the motion to have the proceedings nullified, were general.

If under *Pennoyer v. Neff*, 95 U. S. 714, the statute (Sec. 1721 R. L.) authorizing service on an agent when the principal cannot be found would be invalid, the general appearances, unless shown to have been unauthorized, are a waiver of the objection. *Hartness v. Hyde*, 98 U. S. 476; *Bartlett v. Robbins*, 5 Metc. 184; *Daniels v. Patterson*, 3 N. Y. 47; *Maile v. Tax Assessor*, 18 Haw. 308. Under his power "to do and transact all and every kind of business of what nature and kind soever," the agent had the right to engage counsel for the defendants. *Davis v. Waterman*, 10 Vt. 526; *Mason v. Taylor*, 38 Minn. 32. They kept him as their agent and the attorneys whom he engaged as their attorneys, claiming that service was invalid because the letter of attorney gave no express power to accept service or defend suits. This is not enough. "If an attorney has erroneously entered an appearance for a party it may be withdrawn, provided it is done in due time, before any step taken in pursuance of it, and without occasioning loss or prejudice to the other party." Fletcher, Eq. Pl. & Pr. Sec. 173. "If an attorney has erroneously appeared for a party I know no reason why the mistake may not be corrected provided it be done in due time, before any step taken in pursuance of it, and without occasioning loss or prejudice to the other party." Per Cur. *Jones v. Orum*, 5 Rawle (Pa.) 249. When jurisdiction is acquired solely by unauthorized appearance of an attorney the party may deny the authority of the attorney and get the judgment vacated. "The want of authority, however, should be clearly made to appear." *Winters v. Means*, 25 Neb. 241. It does not satisfactorily appear that the defendants did not either authorize

or ratify, by acquiescence or otherwise, the act of their agent in engaging counsel, all of which must be shown affirmatively to overcome the presumption of the attorneys' authority, and in the absence of which there is no occasion to consider the validity of the original service.

(3) The defendants' general demurrer to the amended bill for want of equity was overruled. They contend that the bill contains no allegation that the plaintiff promised to pay or give anything in consideration of the defendants' promise to convey, but merely that the defendants agreed to convey in consideration of a balance of the purchase price to be paid by the plaintiff and that this agreement was later confirmed by the defendants who then agreed to convey to the plaintiff in consideration of $410, of which the plaintiff paid $200, the balance having been refused by the defendants; that this at the utmost was an offer for a unilateral contract which could be accepted and become a binding obligation to convey on the part of the defendants only by the actual performance of that for which the conveyance was to be made, namely, the full payment of the money, which the bill admits was not done, a part only being paid and the balance refused. An offer for a contract being revocable, say the defendants, until accepted, and as an acceptance of an offer for a unilateral contract can be made only by performance of the thing to be done in consideration of the promise contained in the offer, it follows that the bill merely alleges a promise to convey unsupported by consideration and therefore unenforcible.

The plaintiff says that this ground was not presented to the trial judge in support of the demurrer and cannot be presented for the first time on appeal, citing *In Re Tai Wo Chan Co,.* 9 Haw. 507, 511, and that if the point had been presented and sustained the bill could have been amended, this being a matter of form. This, however, is not a matter of mere form and therefore we are to consider whether the bill shows an enforcible contract. The amended bill avers an agreement be-

tween the parties whereby the defendant Maria Silva was to enter upon and cultivate the land and obtain the fee in her own name holding it as the joint property of the plaintiff and defendant, using the profits towards payment of the purchase price, and that the defendant would without further consideration convey to the plaintiff a certain portion; that the said defendant cultivated the land, receiving a profit of $600, and purchased it for $800 receiving from the plaintiff $200 as part of the purchase money but refusing to account for the profits and income which she received or to convey the agreed part of the land.

The amended bill was amended at the conclusion of the testimony by adding an averment to the effect that about April 28, 1900, defendants agreed to convey to the plaintiff the said portion of land for $410; that $200 was paid by the plaintiff to the defendants as part payment of said $410 and that the balance of $210 was tendered and refused on the ground that the defendants had in their possession money of the plaintiff sufficient to pay the same.

The case, as shown by the bill as thus amended, is not that of an unaccepted offer, but a definite agreement alleged to have been fully performed by the plaintiff but not by the defendants. The plaintiff's performance was completed by payment of the $200 and offer to pay the balance of the $410, which offer was refused.

(4) The defendants' bond, entitled "Bond for Deed," dated April 28, 1900, which the circuit judge thought was a sufficient compliance with the statute of frauds, required the defendants to pay the plaintiff $820 if on or before January 1, 1901, they should not execute and deliver to her a good and sufficient warranty deed for certain land described as the land is described in the alleged contract, and that upon the payment to them by the plaintiff of $410 the obligation should be void otherwise remain in full force, the bond setting forth that "It is expressly agreed that during the interim the said Emilia

Vieira Ennes shall have free access to, full control of, and be entitled to and receive all the products of said land." The defendants contend that the bond neither shows nor authorizes inference of any agreement to convey, being merely an obligation which would become void upon their delivery of the deed and that as far as appears from the bond the defendants could either pay the money or convey the land.

We do not so construe the instrument. Its caption, "Bond for Deed," is significant of a purpose that the obligors meant to bind themselves to the obligee to execute and deliver the deed. A bond for a conveyance is often called a bond for a deed. *Burkhart v. Howard,* 14 Ore. 41; *Sayer v. Mohney,* 30 Ib. 241. "The imposition of a penalty gives only a security for the performance of the contract according to its terms, and is not intended as an option to the obligor; nor does it entitle him to convey or pay the penalty." Warvelle, Vendors, Sec. 131. The contention has often been made that when the bond does not itself contain an agreement to convey "it is at the defendant's option to forfeit the condition and pay the penal sum fixed by the bond or convey the land." *Ewing v. Gordon,* 49 N. H. 445. If the bond were intended to secure to the obligee, upon her payment of $410 to the obligors, their payment to her of $820, such an absurd agreement ought to be clearly expressed, and if the $410 payment were not, as it is, a prerequisite of the delivery of the deed and the bond were meant to secure to the plaintiff the defendants' payment of $820, unless they made the deed, or, in other words, if it were intended to give the defendants their option to pay the money or make the conveyance, appropriate language to express the agreement would easily have suggested itself. The agreement that the plaintiff should control the land "during the interim" has no significance, at least none has been suggested, unless it refers to the interval between the date of the bond and the delivery of the deed.

The bond appears to us to be a sufficient memorandum of the contract sued upon (*Fishel v. Turner,* 13 Haw. 394,) and

to be supported by the letters to the plaintiff from the defendant Maria Silva, in which the following language is used:

"Emilia, we have not yet received the documents of our lot. As soon as we get them we are resolved to sell it. Let me know what you want us to do with your half. If you want it sold together with ours and for what amount will it suit you." (Ex. C.) ·

"Emilia, you wrote me that you are relying upon getting half of Lot No. 7. Well, you can rely upon it, if there is nothing to the contrary, but if it should be lost then I lose half and you lose half but I was astonished in your not mentioning the small piece where you live which earns $380. and you have the right to it as we have the right to this one. My husband was going to get a lawyer for this purpose." (Ex. D.)

"Now in regard to the lot, I have already told you in detail all the expenses and my husband has told your attorney in fact all he has done. My husband made another house on the lot because our family tore down the other.

"Now let me know when you come here if you intend living with us as I want to know in order to enlarge the house.

"I have heard it said around here that they have said that we have not sent you accounts of the lot and we don't know if that already is their business." (Ex. E.)

"Had we wished to be false to you we could have already sold Lot No. 7 and all else that we have and gone to California. But we have a soul and it is to give God. If it was not for you for whom we have been waiting to give you what belongs to you probably we would already have gone away." (Ex. F.)

It is objected that nothing is shown to connect the letters with any other memoranda from which it can be ascertained what land is referred to; that the expressions used in the letter marked "Exhibit D" are more like a declaration that the defendants were entitled to the land and denied the plaintiff's right to it; that the words "Well you can rely upon it" were nothing but an assurance that the plaintiff might depend upon getting the land, but whether as a gift or in performance of a contract in no way appears; but, as said in *Fishel v. Turner,* supra, the question whether these letters "refer to the same oral agreement or transaction may be determined by internal

evidence and coincidences through inspection and comparison." It furthermore appears in this case that no other agreement concerning land was discussed by these parties and this supports the view that the letters refer to the transaction in question. *Beckwith v. Talbert,* 95 U. S. 289. The defendants further object to the letters on the ground that it appears that they were not signed by the defendant Maria Silva but by her husband without her authority. The evidence appears to us to show that the wife authorized the writing of the letters. "It is sufficient if the party's name is signed, although unwitnessed, if done by her authority." *Kuawela v. Hilda,* 4 Haw. 134.

Decree affirmed.

*Carl S. Smith* for plaintiff.

*C. H. Olson (Holmes & Stanley* and *J. S. Ferry* with him on the brief) for defendants.