## WALTER GLOCKNER *v.* SARA M. TOWN AND BANK OF HAWAII, AND BISHOP NATIONAL BANK OF HAWAII.

### No. 3059.

ARGUED APRIL 9, 1958.　　　　　　　　　DECIDED APRIL 18, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

In this case plaintiff seeks to recover from defendant damages suffered by him by reason of defendant's failure to perform a contract to purchase certain real property. There was a motion to dismiss the complaint on the ground that the contract sued upon was within the statute of frauds. The motion was granted and the appeal is from the order of dismissal.

The only issue before this court is whether there is a sufficient memorandum signed by the party to be charged to take the oral contract out of the statute of frauds. It

is alleged that the oral agreement to purchase certain real property was taken out of the operation of the statute of frauds by reason of a receipt signed by the plaintiff and a check, upon which payment was stopped, signed by the defendant.

Section 190-1, Revised Laws of Hawaii 1955, relative to the statute of frauds provides no action shall be brought or maintained in any of the following cases:

"(d) Upon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them; * * *

"Unless the promise, contract or agreement, upon which such action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by him in writing lawfully authorized."

The statute of frauds which exists in England and the various States of the Union was enacted in Hawaii in 1859 with exactly the present wording so far as sale of land is involved. (Hawaii Civil Code 1859, § 1053.) The purpose of the statute is to prevent perpetration of frauds by securing the enforcement of contracts that were never in fact made; it is not to prevent performance of oral contracts that have in fact been made. It is not created to provide an escape to dishonest repudiators. (37 C. J. S., *Statute of Frauds,* § 180, p. 665; § 217, p. 713.)

While much dicta is found to the effect that the writing must contain all of the "essential terms and conditions" of the contract, the court "should always be satisfied with 'some note or memorandum' that is adequate, when considered with the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence, to convince the court that there is no serious possibility of consummating a fraud by enforcement." (Corbin, *Contracts,* vol. 2, c. 22, § 498, p. 681.)

Two or more writings may be relied upon to constitute the memorandum required by the statute of frauds. (37 C. J. S., *Statute of Frauds*, § 177, p. 656.)

"* * * Two or more writings properly connected may be considered together, matters missing or uncertain in one may be supplied or rendered certain by another, and their sufficiency will depend on whether, taken together, they meet the requirements of the statute as to contents and the requirements of the statute as to signature * * *.

*"Papers connected.* The rule is frequently applied to two or more, or a series of letters or telegrams, or letters and telegrams sufficiently connected to allow their consideration together, but the rule is not confined in its application to letters and telegrams; any other documents can be read together when one refers to the other. * * * The number of papers connected to make out a memorandum is immaterial." (37 C. J. S., *Statute of Frauds*, § 177, pp. 656-659.)

In order that separate writings may be considered together, their relation or connection with each other must appear on their face. The writings must contain either an express reference to each other or the internal evidence of their unity, relation or connection sufficient to make parol evidence of their relation unnecessary. (37 C. J. S., *Statute of Frauds*, § 178, p. 659.)

In *Fishel* v. *Turner*, 13 Haw. 392, 395, it is stated:

"The general rule is that in cases of this kind detached unsigned writings in order to be connected with signed writings must be referred to in the signed writings, but that if all the writings are signed it is sufficient if they all refer to the oral agreement, and that whether they do refer to the same oral agreement or transaction may be determined by internal evidence

and coincidences, through inspection and comparison. *Thayer* v. *Luce*, 22 Oh. St. 62."

It is true this statement is dictum as all the documents were signed by the person to be charged.

Williston, *Contracts*, volume 2, Rev. Ed., page 1678, states:

> "The only extension that seems permissible of the doctrine requiring an express reference in the signed paper is where the signed paper at the time of the signature can be shown from its contents to be based on an adoption of a then existing unsigned paper."

In the case before us there are attached to the complaint two documents, a receipt and a check, which appellant claims make a sufficient memorandum of an oral contract to sell real property. The receipt is as follows:

"February 16, 1955

"Received of Sara M. Town One Hundred Dollars. Downpayment on downpayment of $1500.00 on Beach Hotel. (8700 feet more or less) full price $14,950.00. $100.00 monthly payments for 6 months, then $125.00 or more per month with 6% interest on the balance. With approval of the Hawaiian Trust Company.

(Signed) Walter Glockner"

The check, upon which payment was stopped, was as follows:

"Honolulu, Hawaii, U. S. A. February 17, 1955 No. _____

Waikiki Branch
Bank of Hawaii 59-133

Pay to the
Order of          Walter Glockner          $100.00

One Hundred and no/100 ............... DOLLARS

(Signed) Sara M. Town

PAYMENT STOPPED
Ph Kai 265144"

The receipt, which purportedly contains the terms of the contract, was not signed by the vendee, the person to be charged. The check contains no reference to any receipt or so-called contract, contains no description of the subject-matter of the contract, nor terms. In fact, there is no indication whatever of any contract with reference to the sale of land or any other sale.

If the statute of frauds is to serve to prevent fraudulent claims of contracts, it would be a dangerous proceeding to assume that a check for $100, standing alone, signed by an individual may be converted into a contract by the payee of such check for the purchase of lands running into thousands of dollars by the payee making out an ex parte receipt and inserting therein terms of a contract for sale of land.

There is no showing whatever in the document signed by the defendant that she ever saw or approved the terms set forth in the receipt or any other terms for the sale of real estate.

"A check for the payment of the purchase price under a contract is a sequence to, rather than a part of, the contract; it cannot be considered for the purpose of deeming an indorsement thereon the equivalent of a subscription of the contract or a memorandum thereof." (37 C. J. S., *Statute of Frauds*, § 178, p. 662, citing cases.)

Inasmuch as there is no "promise, contract or agreement, * * * or some memorandum or note thereof, * * * in writing, * * * signed by the party to be charged therewith, or by some person thereunto by him in writing lawfully authorized," the ruling of the court below is

AFFIRMED.

*Axel Ornelles* (also on the brief; no reply brief filed) for appellant.

*Oliver P. Soares* (also on the brief) for appellee.