HERBERT F. HANDLEY, Plaintiff-Appellant, Cross-Appellee, *v.* WILLIAM SHEONG CHING, VERMA WAI JUNG CHING, KWAN LIN CHING, STANLEY CHEW TEN CHING, HERBERT TEN LOY CHING, Defendants, and JERRY ALLEN, BEVERLY ANN ALLEN, and THE HOMES CORPORATION, a Hawaii corporation, Defendants-Appellees, Cross-Appellants

NO. 6970

MAY 8, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* After a jury-waived trial, Plaintiff-Appellant Herbert F. Handley (hereinafter Handley) appeals the trial court's decision that he and Defendants-Appellees Jerry Allen (hereinafter Allen), Beverly Ann Allen, and The Homes Corporation were joint venturers in an ill-fated plan to develop a residential condominium project; that with respect to the joint venture the Allens and The Homes Corporation are one entity; and that Handley and the Allens are equally liable for the losses resulting from this project. On the basis of these determinations, the trial court ordered Handley to pay the Allens $7,446.42.

This appeal presents the following questions for decision: (1) Whether the written agreement between the parties to this action required that the Allens repay to Handley all of the funds that he expended on the project contemplated by said agreement; (2) If 1 is no, whether the evidence adduced at trial was sufficient to establish the existence of a joint venture between the parties; and (3) If 2 is yes, whether The Homes Corporation was a third joint venturer. We answer the questions: (1) No; (2) Yes; and (3) No; and we affirm the trial court's decision.

On December 27, 1972, The Homes Corporation, a closely held corporation whose sole stockholders were the Allens, entered into an agreement of sale with defendants the Ching family (hereinafter Chings) for the purchase of approximately ten acres of real estate near Kahaluu, Oahu. The Homes Corporation made a downpayment of $50,000.00.

It was Allen's intention to obtain planned unit development (PUD) zoning approval from the City and County of Honolulu and then to develop the property with some sixty condominium townhouses. In furtherance of this project, he sought the financial assistance of an outside investor. Handley, a real estate developer from Texas, became interested in Allen's project and the two men negotiated an agreement dated January 5, 1973 (subsequently amended on January 5, 1973, and February 2, 1973) between Handley, the Allens, and The Homes Corporation. Under the terms of the amended agreement, the parties agreed to form a new Hawaii corporation, in which Handley would own fifty-one percent and the Allens forty-nine percent, to develop the property. Handley was to obtain a commitment for a loan to cover the costs of the development; the loan was to be signed by the new corporation and person-

ally guaranteed by both Handley and the Allens. Upon formation of the new corporation, The Homes Corporation was to transfer the fee simple title to the property to the new corporation for an amount equivalent to the price it was to pay to the Chings for the property. Among other duties, Allen was to be responsible for the management, design, and supervision of all phases of the construction, installation, and sale of the condominiums. Handley and Allen were to share equally in the profits and losses of the new corporation.

In April 1973, Handley and Allen obtained a loan from the Bank of Hawaii for $69,500.00, for which both parties were jointly and severally liable. The principal of this loan was used by Handley to pay expenditures of the project; other project payments were made from Handley's personal funds.

In July 1974, Handley informed Allen that he was no longer able to advance funds to the project. Soon thereafter, The Homes Corporation defaulted on the agreement of sale. In January 1975, the City and County denied the PUD zoning application. The new corporation was never formed.

Handley made demand on the Allens and The Homes Corporation for reimbursement of the funds he had expended on the ill-fated development venture. He based his demand on paragraph 14 of the amended agreement which provides in pertinent part:

[U]pon any default under this Agreement on the part of Allen or Beverly Ann Allen, then and in any such event . . . [t]he Allens shall be liable to Handley for all sums so paid or incurred, including reasonable attorneys fees, for the construction, completion, and equipment of the condominium improvements, as aforesaid, whether the same shall be paid or incurred pursuant to the provisions of this paragraph 14 or otherwise, and all payments made or liabilities incurred by Handley under this agreement of any kind whatsoever shall be paid by the Allens to Handley upon demand with interest at the rate of twelve percent (12%) per annum to the date of payment to Handley.

The Allens and The Homes Corporation refused to comply with this demand and counterclaimed against Handley for damages of $386,000.00, the amount due the Chings under the agreement of sale.

Appellant initially argues that paragraph 14 of the parties' agreement should be controlling in this case.

The trial court stated in its Conclusions of Law No. 3:

Applying general rules of interpretation of contracts, the Court must read the entire contract. The Court will not take sentence by sentence and try to make it into something that is not there. Section 14, which is very poorly written, becomes ridiculous if read literally. The Court will not take words out of context and find there was a guarantee in this case that anything that Herbert F. Handley had paid out, was to be reimbursed by the Allens.

The transcript of the trial makes clear that it was the court's position that the parties never became obligated to perform the agreement because it was premised on the existence of the new corporation, which was never formed, and that paragraph 14, which ostensibly insulated Handley from a liability for losses, never took effect.

A condition precedent to an obligation to perform a contract calls for the performance of some act or the happening of some event after a contract is entered into, upon the performance or happening of which the obligation to perform immediately is made to depend. 17 AM. JUR. 2d *Contracts* § 321 (1964).

A necessarily drawn implication from the language of the amended agreement is that the formation of the new corporation contemplated by the parties was a condition precedent to any obligation to perform the provisions of the agreement. The agreement initially states: "Whereas, Handley and the Allens desire to form a new Hawaii corporation for the purpose of developing the subject property . . ." Almost every subsequent section of the agreement, including paragraph 14 upon which Handley purports to rely, refers to the rights and duties of the parties in terms of the existence of the new corporation. Because the condition precedent was never fulfilled, none of the terms of the agreement ever became binding upon the parties. This being so, the appellees were under no contractual duty to repay Handley for all sums expended on the project.

Handley next argues that the court erred in characterizing the transaction entered into by the parties as a "joint venture." It is his position that the parties were in fact "promoters," people who bring about the incorporation and organization of a corporation. Certainly, Handley and Allen do fall within this definition.

However, the law varies greatly as to whether co-promoters stand in the relationship of agents, partners, or joint adventurers. 1 FLETCHER, CYCLOPEDIA OF CORPORATIONS § 191 (1974). The general rule is that "the Court will look to the substance and the circumstances and not the labels placed on them by the parties." *Johnson v. Nychyk,* 21 Ariz. App. 186, 517 P.2d 1079, 1081 (1974). An actual intention by the parties to be considered joint adventurers is not essential to a finding of a joint venture. *Sheridan v. McBain,* 564 S.W.2d 540, 544 (Mo. App. 1978).

As the Colorado Court of Appeals stated in *Schuette v. Winternitz,* 498 P.2d 1183 (Colo. App. 1972):

> The relationships among promoters are not such as can be readily classified or categorized, but their rights and duties as among themselves should be based on the particular contractual relationship entered into by them, their common goals, their specific function within the group of promoters, and their relative knowledge and contribution to the total scheme. [Citation omitted.] Their rights and duties should then be determined according to the equities presented, taking into account whether they are all on equal footing as co-promoters, whether some are partners and some are agents, or whether some other relationship exists among them. Such a determination becomes basically a question of fact.

498 P.2d at 1185.

In this case, from the evidence of the relationship between the parties, it was perfectly reasonable for the court to characterize this promotion transaction as a joint venture. It was apparent that the parties stood on equal footing as entrepreneurs. Their mutual goal was the ultimate success of their venture; that their hopes were frustrated in no way alters their initial relationship. In any event, the precise designation accorded the parties here — be they co-promoters or joint venturers — in no way effects the disposition of the case. As we explain below, their financial obligations among themselves will be the same.

Appellant next claims as error the court's Conclusion of Law No. 4: "The compelling article in this case is where the profits and losses would be split 50/50, and the Court finds that under the circumstances of this case, where the project did not materialize to the extent that they hoped for, that the losses will be so divided."

The general rule is that for losses, the promoter will ordinarily look to his co-promoter for contribution. *Id.* at § 220. Further, since if the promoters have not expressly agreed upon a division of the profits of their enterprise, the law will imply an equal division, 18 AM. JUR.2d *Corporations* § 136 (1965), the same implied equal division logically applies to any losses.

In this case, because there was no express contract, the court was permitted to look at the intentions of the parties as manifested by their dealings. Paragraph 16 of the agreement, stating that Handley and the Allens "shall share in the net profits and losses of the new corporation" equally, although inoperative, clearly expresses the parties' intention. Since this intention is identical to the general rule of law, the court's conclusion was without error.

Finally, appellant objects to the court's Conclusions of Law No. 5: "HOMES and the ALLENS, as sole stockholders of HOMES, can be considered, for purposes of this suit, a single entity"; and No. 6: "Any contribution made by HOMES to the project should be credited to the ALLEN'S contribution." He contends that rather than having the losses divided between himself and the appellees collectively, they should be split three ways, with Allen and The Homes Corporation considered to be separate promoters or joint venturers.

Only those persons who are active participants in the promotion of a corporation are liable for contribution to the legitimate expenses of promoting that corporation. *Id.* at § 136. In this case, although this property held by The Homes Corporation under the agreement of sale with the Chings was to be the basis of the new corporation, Homes in no way promoted the corporation. It is clear from the evidence that Handley and Allen were the sole promoters.

Nevertheless, The Homes Corporation did make a substantial expenditure pursuant to the agreement of sale that benefited Handley's and Allen's venture. We find no error in the court's conclusion that this expenditure should be attributed to the Allens' share because they were the sole stockholders of The Homes Corporation.

Appellant's remaining objections to the court's findings and conclusions are resolved by the above analysis and need not be discussed.

Because we are affirming the judgment of the court below, the question of whether appellees have perfected or abandoned their cross-appeal need not be decided.

Affirmed.

*James M. Sattler (Anne L. Williams* and *Matthew J. Yingling* with him on the briefs) for plaintiff-appellant, cross-appellee.

*John H. Robinson* for defendants-appellees, cross-appellants.