RON E. MILLER and KATRIN VIGGOSDOTTIR, Plaintiffs-Appellants, *v.* ROSS L. PEPPER and MRS. ROSS L. PEPPER, Defendants-Appellees

NO. 7491

CIVIL NO. 54014

JANUARY 8, 1982

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

In this case, on Sunday the plaintiffs-appellants, Miller and Viggosdottir,[1] thought they had entered into a residential rental-with-option-to-purchase agreement, but on Tuesday they found out from a third party that on Monday the owners had contracted to sell to other parties. Although we sympathize with the plaintiffs-appellants, we affirm the entry of summary judgment against them because we do not enforce moral obligations, only legal ones.

The owners, Mr. and Mrs. Pepper, gave a broker a 90-day listing for the sale of their Iliwahi Loop residence. Not having received an acceptable offer, on Sunday, February 5, 1978,[2] Mr. Pepper entered into a rental agreement with the appellants, whereby the appellants agreed to rent Mr. and Mrs. Pepper's Iliwahi Loop residence from March 15, 1978, through March 15, 1979, to deposit a security

---

[1] Plaintiffs-Appellants are married to each other.

[2] The rental agreement is erroneously dated February 5, 1977.

deposit of $600 and to pay a monthly rent of $700 per month in advance. In the space for "special conditions," the following words were written: "See attached lease option-to-purchase and payment schedule." No schedule was attached. It never existed. Upon signing, Ms. Viggosdottir gave Mr. Pepper her personal check in the amount of $600, and Mr. Pepper gave appellants the key. The check indicated that it was a "deposit."

Late the next day[3] Mr. and Mrs. Pepper signed a contract to sell their Iliwahi Loop residence via a five-year agreement of sale to parties other than the appellants. The sale was not made subject to the rental agreement with the appellants.

On March 3, 1978, appellants sued the Peppers and prayed for the following relief:

1. $10,000.00 for mental anxiety, distress and inconvenience;

2. $10,000 for being compelled to live in a less satisfactory residence;

3. The difference between the true market value of the residence and $89,500 at the end of one year from the date of the lease option to purchase agreement;

4. That the Defendants be compelled to specifically comply to the terms of the lease-option to purchase agreement;

5. $50,000 because the Plaintiffs will not be able to live in the residence uniquely satisfactory to the needs of their family for the indefinite future; and. . . .

On April 11, 1979, the Peppers moved for summary judgment and asserted:

1. There is no contract for the sale/purchase of the residence;

2. Assuming there is a contract, it is barred by the statute of frauds (Hawaii Revised Statutes chapter 656 (1976, as amended)); and

3. There are no facts to take this case out of the statute of frauds.

---

[3] In his deposition, Mr. Pepper testified that he and Mrs. Pepper signed the contract "on the last day of the 7-day extension of that 90-day [listing] agreement. . . ."

The lower court granted summary judgment in favor of the Peppers.

The record does not indicate that the appellants took any action to delay or stop the sale of the residence to the other parties, pending determination of appellants' rental and option rights, if any. Apparently, that sale closed prior to entry of summary judgment in this case. Moreover, Mr. Miller testified[4] that appellants were interested in enforcing the rental agreement only if they could enforce the alleged option-to-purchase agreement. He admitted that they rejected Mr. Pepper's offer to try to get the purchasers to recognize the rental agreement. In doing so, appellants made their rental rights contingent upon their right to enforce the option agreement. Thus, the only point of error cited by appellants in their opening brief is that the lower court erred when it decided that the alleged option agreement was unenforceable.

The general issue is whether, viewing the record in the light most favorable to the appellants, there is a genuine issue as to any material fact. The specific issue is whether or not the parties entered into an enforceable option-to-purchase agreement. We hold that they did not.

> An agreement of sale of land which contains complete and certain essential terms is a valid and enforceable contract if the facts indicate that the parties at the time it was entered into had no expectation of further provisions to be negotiated later. Essential terms are the identification of the parties, a description of the property sold, the price, the time and manner of payment and any other terms in the agreement which are essential to the agreement.

*In Re Sing Chong Co., Ltd.,* 1 Haw. App. 239, 617 P.2d 578 (1980).

In this case, the parties are identified, the property is described, and if we apply the statute of frauds the way the appellants want us to,[5] Mr. Miller's testimony that the parties agreed to a "lease/purchase" agreement, to a one-year lease, to a subsequent purchase at a

---

[4] All evidence in this case is contained in various depositions.

[5] *Compare* 72 Am. Jur.2d, *Statute of Frauds,* § 296 (1974) ("A memorandum sufficient to satisfy the requirement of the statute of frauds must be complete in itself as to the parties to, and the essential terms of, the contract. The memorandum cannot

price of $89,500, and to $700 per month rent with $400 going toward payment of the purchase price and $300 for rent may satisfy the price requirement and possibly even the time of payment requirement. However, Mr. Miller admitted that the parties had not agreed on the manner or method of payment of the purchase price. He testified as follows:

A. ... depending on what I received from my home, the sale of my home in Arizona, depending on how many dollars I had, I would either go to a lending institution and take advantage of my VA loan and purchase the house in that way, or work with an agreement of sale with Mr. Pepper.

And he was, you know ... I believe we discussed this very lightly, and he was in agreement with just about anything I could come up with. He said we could work it out, no problem.

Ms. Viggosdottir's testimony was essentially the same as her husband's. Thus, even if we apply the statute of frauds the way the appellants want us to, their evidence proves the absence of agreement on the manner or method of payment.

The record shows that at the time the parties entered into the alleged option-to-purchase agreement, they left an essential term to be negotiated later. Consequently, we hold the alleged option-to-purchase agreement to be legally invalid and unenforceable.

Affirmed.

*Charles R. Kozak* for plaintiffs-appellants.

*Leland Spencer (Richard H. Lachmann* on the brief; *Spencer, Snyder & Stirling* of counsel) for defendants-appellees.

---

rest partly in writing and partly in parol; that is to say, a deficiency in the memorandum cannot be supplied by parol evidence." (footnotes omitted)); and *Rose v. Parker*, 4 Haw. 593, 598 (1883), with Comment 1 to Hawaii Revised Statutes § 490:2-201 (1976) (Uniform Commercial Code) ("The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction.") and Comment 2 to § 2-201 of the proposed Uniform Land Transactions Act.