**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000481
30-OCT-2020
07:52 AM
Dkt. 102 MO**

NO. CAAP-17-0000481

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE MATTER OF THE
CHARLES L. LAKE, JR. and THERESA PHYLLIS LAKE
REVOCABLE TRUST, DATED NOVEMBER 30, 1987, AS AMENDED

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(TRUST NO. 16-1-0195)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Wadsworth, JJ.)

Respondents/Petitioners-Appellants Robert A. Lake

(**Bob**), Cindy L. Burt (**Cindy**), and Monica L. Lake (**Lani**),

(collectively, the **Beneficiaries**) appeal from the June 5, 2017

Judgment on the Order Denying Petition for Instructions (**Judgment

Denying Petition for Instructions**) and the June 5, 2017 Judgment

on the Order Granting Petition to Confirm Settlor's Right to

Amend Trust and Trustee's Authority Over Real Property (**Judgment

Granting Petition to Confirm Settlor's Right to Amend**) entered by

the Circuit Court of the First Circuit (**Circuit Court**)[1] in favor of Petitioners/Respondents-Appellees Theresa Phyllis Lake, as surviving Settlor (**Mrs. Lake**), and Cheryl L. Padeken, as Successor-Trustee (**Cheryl**).  The Beneficiaries also challenge the Circuit Court's:  (1) June 5, 2017 Order Denying Petition for Instructions (**Order Denying Instructions**); and (2) June 5, 2017 Order Granting Petition to Confirm Settlor's Right to Amend Trust and Trustee's Authority Over Real Property (**Order Confirming Settlor's Right to Amend**).[2]

Following the filing of Cheryl and Mrs. Lake's Petition to Confirm Settlor's Right to Amend Trust and Trustee's Authority Over Real Property (**Petition to Confirm Settlor's Right to Amend**) and the Beneficiaries' Petition for Instructions (**Petition for Instructions**), the Circuit Court granted the Petition to Confirm Settlor's Right to Amend and denied the Petition for Instructions.  On appeal, the Beneficiaries challenge these rulings.  After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we affirm.

---

[1]     The Honorable R. Mark Browning presided, and the Honorable Derrick H.M. Chan presided over earlier proceedings below.

[2]     The Circuit Court also entered Findings of Fact and Conclusions of Law Regarding Petition to Confirm Settlor's Right to Amend Trust and Trustee's Authority Over Real Property, filed on September 12, 2016 (**FOFs/COLs re Settlor's Right to Amend Trust**), and Findings of Fact and Conclusions of Law Regarding Petition for Instructions, filed on September 14, 2016 (**FOFs/COLs re Instructions**).  However, these were entered after the filing of the notice of appeal.  As discussed later, the Circuit Court lacked jurisdiction to enter these FOFs and COLs.

I.    BACKGROUND

On September 12, 2016, Mrs. Lake, as the surviving Settlor of the Revocable Trust of Charles Louis Lake, Jr. and Theresa Phyllis Lake (the **Trust**), and Cheryl, as Successor-Trustee, filed a Petition to Confirm Settlor's Right to Amend. The petition states that on November 30, 1987, Charles L. Lake, Jr. (**Mr. Lake**) and Mrs. Lake, as Grantors (the **Lakes** or the **Settlors**), executed a trust instrument known as the "Declaration of Revocable Trust of Charles Louis Lake, Jr. and Theresa Phyllis Lake," (the **Trust Instrument**) with Mr. Lake as Trustee, which was amended by instruments dated August 30, 1999 (**First Amendment**), November 25, 2011 (**Second Amendment**), and January 29, 2015 (**Third Amendment**).[3]

The petition further states that Mr. Lake died on March 23, 2015, and asserts that Mrs. Lake held the power and authority to amend the Trust after the death of Mr. Lake, with the consent of Cheryl.  The petitioners cited Article 2.04 of the Trust Instrument, which states, in pertinent part:

> ARTICLE II - TRUST PROVISIONS DURING LIFETIME OF GRANTORS
>     . . . .
>
> 2.04.  Revocation and Amendment After Death of One Grantor.  After the death of one of the Grantors, the surviving Grantor shall have the right to revoke or amend

---

[3]    The Lakes also drafted a 2011 "Guide to Disposing of Assets in the Charles L. & Theresa P. Lake revocable trust dated November 30, 1987" (**2011 Guide to Disposing of Assets**), attached to and incorporated into the Second Amendment.  This guide was replaced by a 2014 "Guide to Disposing of Assets in the Charles L. & Theresa P. revocable trust dated Nov. 30, 1987" (**2014 Guide to Disposing of Assets**), which was attached to and incorporated into the Third Amendment.

the entire trust agreement at any time by an instrument in writing, signed by the surviving Grantor, acknowledged before a notary public and delivered to the Trustee; PROVIDED, HOWEVER, that said surviving Grantor must first obtain the written consent of the Trustee.

With reference to a dispute with the Beneficiaries that arose after Mr. Lake's passing, as to Mrs. Lake's right to amend the trust, Mrs. Lake and Cheryl requested the court confirm Mrs. Lake's right to amend the Trust as the surviving Settlor.

The petition also states that, in 2007, Mr. Lake, as Trustee, had acquired title to a property at 46-251 Kalali Street in Kāneʻohe (**46-251 Kalali Street**) and that the applicable Land Court Certificate of Title had since been amended to reflect Cheryl as the successor in interest.  The petitioners represented that Bob resided at 46-251 Kalali Street as a renter, paying a monthly rent of $2,550.  The petitioners submitted that "[t]here is no written rental agreement for the premises, only an oral agreement.  Bob is a month to month tenant, whose tenancy can be terminated upon 45 days' notice."  Despite notification to Bob that Mrs. Lake requested he vacate 46-251 Kalali Street, Bob had refused to do so.  Mrs. Lake and Cheryl requested that the Circuit Court "confirm that Trustee is entitled to terminate Bob's tenancy of [46-251 Kalali Street] and to be restored to immediate possession of [46-251 Kalali Street]."  Additionally, the petitioners sought to "confirm the authority of Trustee to sell real estate owned by the Trust estate, including without

limitation [46-251 Kalali Street], pursuant to the terms of the Trust."

On September 14, 2016, the Beneficiaries filed the Petition for Instructions, asserting that the Settlors "did not intend for their Trust Agreement to be fully revocable upon the first death of a settlor."  The Beneficiaries cited the "succession of multiple trust amendments, agreements, and guides to disposing assets, which provide a detailed description of Settlors' intentions through their estate plan to provide for the Surviving Spouse, provide equal benefits to each of their children, and to effectively tax plan[.]"  They argued that "a proper reading of the Trust, as the Settlors intended it, would require that the Trust be irrevocable," especially in order to provide the tax benefits sought in the First Amendment.

With respect to Bob's payments to the Trust and residence at 46-251 Kalali Street, the Petition for Instructions states the following:

> 17.  In or around October or November 2007, [Mr. Lake] as Trustee of the Trust Agreement and Bob **entered into an agreement whereby Bob would pay the Trust $2,550 from 2008 until June 1, 2023, and would receive in exchange the right to occupy 46-251 Kalali Street until the death of both of his parents, and upon their death, he would inherit his parents' property at 46-309 Kalali Street** [(**46-309 Kalali Street**)].
> . . . .
> 19.  The agreement between the Trust and Bob is plainly referenced in the [2011] Guide to Disposing Assets, which provides for the "46-309 Kalali Trust Note," and states that Bob "[p]ays Trust note $2550.  Until 1 June 2023 (last payment)" and "[p]ays property tax."
> . . . .
> 21.  The agreement between the Trust and Bob was again plainly referenced in the [2014] Guide to Disposing

> Assets, which provides, "Bob is to inherit the 46-309 Kalali St. property. He continues to pay his note ($2550. per month) to the Trust until June 1 of 2023).["]
> . . . .
>
> 31. [Bob] has consistently paid the $2,550 and property tax, and has lived in the 46-251 Kalali property based on the agreement.
> . . . .
>
> 34. . . . . [I]f Bob is required to vacate the 46-251 Kalali Street property and does not inherit the 46-309 Kalali Street property, the Trust will be unjustly enriched by its receipt and possession of his payments.
> . . . .
>
> 49. The Trust is a party to a binding and enforceable agreement with Bob.
>
> 50. Bob has continued to make payments as required under the agreement.
>
> 51. If Bob's residence in the 46-251 Kalali Street property is terminated and/or if the Trust does not convey the property upon the death of both Settlors, the Trust will be in breach of its contract with Bob.
>
> 52. The Trust and successor Trustee are at risk of breach of contract damages if the Trust does not comply with the terms of the agreement.

(Emphasis added).

The Beneficiaries requested that the Circuit Court: (1) instruct Cheryl as to the irrevocable nature of the Trust Agreement following the death of Mr. Lake; (2) invalidate any amendments made after the death of Mr. Lake; and (3) reaffirm the agreement between Bob and the Trust, which (purportedly) provides that Bob is entitled to live at 46-251 Kalali Street until the death of both of his parents and that, upon their death, he will receive title to 46-309 Kalali Street. In their response to the Petition to Confirm Settlor's Right to Amend, the Beneficiaries essentially mirrored the arguments presented in their Petition for Instructions.

In Mrs. Lake's and Cheryl's Objection to the Petition for Instructions, they argued that the irrevocability of the Trust could create adverse tax consequences and thus could not have been the intent of the Settlors, especially in light of the clear and unambiguous provision that the surviving Settlor has the right to amend the Trust.  Mrs. Lake and Cheryl also argued that Bob's request for "reaffirmation" of his purported agreement with the Trust should be denied on the basis that:  (1) it is unenforceable for failing to comply with the statute of frauds; (2) such an agreement would never have been made since it would purport to irrevocably bind the Trust to a certain disposition, contrary to the revocable nature of the Trust; and (3) the Guides to Disposing Assets cannot and do not form the basis of a binding or enforceable obligation to Bob.

In reply, the Beneficiaries pointed to Paragraph G in the First Amendment, which states, in pertinent part:

> ARTICLE VII- DEFAULT PROVISIONS AND
> SPECIAL MARITAL PROVISIONS
> . . . .
>
> G.    POWER OVER PROPERTY.
>
> The powers reserved by the Trustors to revoke or amend this trust or to invade or withdraw principal, as to their undivided interests in the property, **are to be held by the Trustors during their joint lifetimes** in their capacity as managers of the property, subject to all restrictions imposed by law on their management by husband and wife of property. . . .
> Notwithstanding the foregoing, the power of the Trustee to exercise any of the discretionary powers conferred by this instrument shall not be limited in the event of the disability or incapacity of either or both Trustors.

(Emphasis added).

The Beneficiaries argued that upon the death of Mr. Lake, the Lakes' joint lifetimes ceased, along with Mrs. Lake's power to amend the Trust.

On April 18, 2017, following a March 2, 2017 hearing,[4] the Circuit Court issued an Amended Minute Order,[5] which stated as follows:

> AFTER CONSIDERING THE REPRESENTATIONS MADE BY COUNSEL AT THE HEARING, AND REVIEWING THE FILE AND DOCUMENTS SUBMITTED IN THIS MATTER, THE PETITION TO CONFIRM SETTLOR'S RIGHT TO AMEND TRUST AND TRUSTEE'S AUTHORITY OVER REAL PROPERTY AND THE PETITION FOR INSTRUCTIONS IS GRANTED.  THE COURT FINDS THAT:
> - ARTICLE 2.04 OF THE TRUST AGREEMENT, AS AMENDED IS VALID AND ALLOWS THE TRUST TO BE AMENDED.
> - THERE IS NO VALID CONTRACT BETWEEN THE TRUST AND ROBERT ALAN LAKE.

On June 5, 2017, the Circuit Court entered the Judgment and Order Denying Petition for Instructions and the Judgment and Order Granting Petition to Confirm Settlor's Right to Amend.[6]  On June 21, 2017, the Beneficiaries timely filed a Notice of Appeal.

On August 1, 2017, the Circuit Court ordered counsel for the parties to submit proposed findings of fact and conclusions of law regarding the Order Denying Petition for Instructions and Order Granting Petition to Confirm Settlor's Right to Amend.[7]  On September 21, 2017, the Circuit Court

---

[4]     Neither party submitted transcripts of the hearing.  The Beneficiaries do not appear to have complied with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 10(b)(2), requiring the filing of a certificate that no transcripts are to be prepared.

[5]     The Honorable Derrick H.M. Chan presided.

[6]     The Honorable R. Mark Browning presided.

[7]     It is not apparent from the record as to what prompted the court to issue this order.  On June 19, 2017, the Beneficiaries filed a Petition to
(continued...)

entered Findings of Fact and Conclusions of Law Regarding

Petition to Confirm Settlor's Right to Amend Trust and Trustee's

Authority Over Real Property, filed September 12, 2016, and

Findings of Fact and Conclusions of Law Regarding Petition for

Instructions, filed September 14, 2016.  In the FOFs/COLs re

Settlor's Right to Amend Trust, the Circuit Court found and

concluded as follows, in pertinent part:

<u>FINDINGS OF FACT</u>

<u>Settlor's Authority to Amend the Trust</u>

4.  On November 30, 1987, [Mr. and Mrs. Lake], as Grantors, executed a trust instrument, with [Mr. Lake], as Trustee, and created [the Trust.]
. . . .

13.  Petitioners and Respondents dispute whether Mrs. Lake, as the surviving Settlor of the Trust, has the authority to amend the Trust after Mr. Lake's death.

14.  Respondents contend that the Trust became irrevocable upon the death of Mr. Lake.  Petitioners maintain that the Trust expressly authorizes Mrs. Lake, as the surviving Settlor, to amend the Trust, subject to approval by the Trustee, even after Mr. Lake's passing.

<u>Trustee's Authority over Real Properties</u>

15.  While he was still living, Mr. Lake, as Trustee of the Trust, acquired title to that property located at 46-251 Kalali Street, Kaneohe, Hawaii 96744[.]

16.  After Mr. Lake's passing, Land Court Certificate of Title . . . (as applicable to the Rental) was amended to reflect that Trustee was the successor Trustee of the Trust[.]

17.  At the time the [Petition to Confirm Settlor's Right to Amend] was filed, Respondent Bob had been residing

---

[7](...continued)
Stay Enforcement of Judgment Pending Appeal.  A Settlement Conference appears to have taken place on July 3, 2017, and a hearing occurred on August 24, 2017.  In the interim, however, the court issued an August 1, 2017 minute order directing counsel to prepare the findings and conclusions.  On August 7, 2017, counsel for the Beneficiaries contacted the court to express concern with, *inter alia*, "additions to the record on appeal at this point," since the notice of appeal had been filed as of June 21, 2017, but the court appears to have disregarded these concerns without hearing further argument.

in the Rental, and has been paying monthly rent in the amount of $2,550 per month.  There is no written rental agreement for the premises.  Bob is a month to month tenant, whose tenancy can be terminated upon 45 days' notice.

. . . .

CONCLUSIONS OF LAW

1.  Article 2.04 of the Revocable Trust of Charles Louis Lake, Jr. and Theresa Phyllis Lake, dated November 30, 1987, as amended (the "Trust") is valid and allows the Trust to be amended.

2.  Petitioner Theresa Phyllis Lake, as the surviving Settlor of the Trust, has the right to amend the Trust.

3.  No valid contract exists between the Trust and Respondent Robert Alan Lake ("Bob") for the sale of any of the Trust's real estate.

4.  The Trustee is entitled to terminate Respondent Bob's tenancy of the rental located on 46-251 Kalali Street, Kaneohe, Hawaii 96744 (the "Rental") and to be restored to immediate possession of the Rental.

In the FOFs/COLs re Instructions, the Circuit Court made nearly identical findings and conclusions, but further found and concluded that:

FINDINGS OF FACT

. . . .

20.  Petitioner Bob contends that he had some type of "agreement" with Mr. Lake, whereby Bob would pay the Trust $2,550 per month from 2008 until June 1, 2023 in exchange for the right to occupy the Rental until Theresa's death, at which time Bob would then inherit that certain real property located at 46-309 Kalali Street, Kaneohe, Hawaii 96744 ("Theresa's Home").  Petitioner Bob seeks "reaffirmation" of the purported "agreement."

. . . .

CONCLUSIONS OF LAW

. . . .

3.  No valid "agreement" or contract exists between the Trust and [Bob] for the sale of any of the Trust's real estate, including [Theresa's Home].

4.  The Trustee is entitled to terminate Petitioner Bob's tenancy of the rental located on 46-251 Kalali Street . . . and to be restored to immediate possession of the Rental.

## II. POINTS OF ERROR

On appeal, the Beneficiaries assert three points of error, contending that the Circuit Court erred in: (1) failing to recognize that the 1999 First Amendment to the Trust limited the power to amend to the Lakes' joint lifetimes and concluding that the Lakes' joint trust and its amendments gave Mrs. Lake the power to amend the trust after Mr. Lake died; (2) concluding the Trust's 2007 equalization agreement with Bob[8] was invalid and not enforceable and issuing a writ of possession to evict Bob from 46-251 Kalali Street; and (3) summarily denying Bob relief on his equitable claims against the Trust and entering judgment without providing reasons for its conclusion.

## III. APPLICABLE STANDARDS OF REVIEW

"The construction of a trust is a question of law which this court reviews *de novo*." In re Lock Revocable Living Trust, 109 Hawaiʻi 146, 151, 123 P.3d 1241, 1246 (2005) (citation and internal quotation marks omitted).

"[A] trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." Chun v. Bd. of Trs. of the Emps.' Ret. Sys. of

---

[8] As discussed in Section IV.C. below, the Beneficiaries argue that Bob entered into an enforceable "equalization agreement" with the Trust, whereby Bob would make certain payments to the Trust in exchange for the right to reside at 46-251 Kalali Street *and* inherit 46-251 Kalili Street after the second of his parents died.

the State of Haw., 106 Hawaiʻi 416, 430, 106 P.3d 339, 353 (2005) (citation and internal quotation marks omitted).  "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding.  [The Hawaiʻi Supreme Court has] defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."  Leslie v. Estate of Tavares, 91 Hawaiʻi 394, 399, 984 P.2d 1220, 1225 (1999) (citation and internal quotation marks omitted).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness.  [The appellate court] ordinarily reviews COLs under the right/wrong standard.  Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.  However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Chun, 106 Hawaiʻi at 430, 106 P.3d at 353 (citation, internal quotation marks, and brackets omitted).

"The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant."  Aickin v. Ocean View Invs. Co., 84 Hawaiʻi 447, 453, 935 P.2d 992, 998 (1997) (citation, internal quotation marks, and brackets omitted).

IV.  DISCUSSION

A.  Jurisdiction to Enter FOFs and COLs

As a threshold matter, we note the Circuit Court entered its September 21, 2017 FOFs/COLs on each of the respective orders after the filing of the June 21, 2017 notice of appeal.  Because the general rule is that "the filing of a notice of appeal divests the trial court of jurisdiction over the appealed case," we must determine whether the Circuit Court had jurisdiction to enter the FOFs and COLs.  See TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 265, 990 P.2d 713, 735 (1999) (citing State v. Ontiveros, 82 Hawaiʻi 446, 448–49, 923 P.2d 388, 390–91 (1996); Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawaiʻi 494, 500, 880 P.2d 169, 175 (1994)).

"Notwithstanding the general effect of the filing of a notice of appeal, the trial court retains jurisdiction to, inter alia, determine matters collateral or incidental to the judgment, and may act in aid of the appeal."  Id.  For example, a circuit court retains jurisdiction to enforce a judgment, to approve a supersedeas bond to stay a judgment, or to hear a motion for stay pending appeal.  Sakatani v. Murakami, CAAP-10-0000106, 2012 WL 2878131, *3 (Haw. App. July 13, 2012) (SDO) (citing MDG Supply, Inc. v. Diversified Invs., Inc., 51 Haw. 375, 381, 463 P.2d 525, 529 (1969)); Chun, 106 Hawaiʻi at 430 n.13, 106 P.3d at 353 n.13.  Conversely, a circuit court lacks jurisdiction to "alter the substance" of a final judgment while an appeal is pending or to

accept a stipulation of the parties as to the facts of the case after the filing of the notice of appeal.  Tanga v. Centex Homes, CAAP-14-0001036/CAAP-14-0001373, 2018 WL 581136, *3-4 (Haw. App. Jan. 29, 2018) (mem. op.); State v. Pacquing, 129 Hawaiʻi 172, 186, 297 P.3d 188, 202 (2013).  Additionally, Rule 52(b) of the Hawaii Rules of Civil Procedure (**HRCP**)[9] allows the court to "amend its findings or make additional findings" upon motion of a party made not later than ten days after entry of the judgment.

Here, the record does not contain a motion, timely or otherwise, by either of the parties for additional or amended findings following the entry of the judgments and orders in this case.  The FOFs and COLs do not relate to the Circuit Court's enforcement of the judgment, determination of a supersedeas bond, or adjudication of the Beneficiaries' July 27, 2017 Petition to Stay Enforcement of Judgment Pending Appeal.  Accordingly, we conclude that the Circuit Court lacked jurisdiction to enter the FOFs/COLs re Settlor's Right to Amend Trust and the FOFs/COLs re

---

[9]     HRCP Rule 52(b) provides:

**Rule 52.  FINDINGS BY THE COURT**.
        . . . .

        **(b) Amendment**. Upon Motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly.  The motion may be made with a motion for new trial pursuant to Rule 59.  When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the circuit court an objection to such findings or has made a motion to amend them or a motion for judgment.

14

Instructions, and we decline to consider them in conjunction with our review. See, e.g., State v. Abordo, CAAP-12-0000602, 2015 WL 755877, *1 n.4 (Haw. App. Feb. 23, 2015) (SDO) (declining to consider findings of fact and conclusions of law in rendering a decision when the district court lacked jurisdiction to enter them after the notice of appeal was filed).

B.   Mrs. Lake's Power to Amend the Trust

The Beneficiaries contend that the Circuit Court erred in concluding that the Trust Instrument authorized Mrs. Lake to amend the Trust after the passing of Mr. Lake. Specifically, the Beneficiaries argue that the court erroneously disregarded (1) the plain text of the First Amendment that implicitly terminated her individual ability to amend the trust and (2) the tax planning strategies introduced by the First Amendment that are inconsistent with a surviving Settlor's power to amend the Trust.

"When construing a trust, this court is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills." In re Lock, 109 Hawaiʻi at 151, 123 P.3d at 1246 (citing Trust Created Under the Will of Damon, 76 Hawaiʻi 120, 124, 869 P.2d 1339, 1343 (1994)). "It is a fundamental principle that the intent of the settlor, as expressed in the trust instrument, shall prevail, 'unless inconsistent with some positive rule of law.'" In re Ishida-Waiakamilo Legacy Trust, 138 Hawaiʻi 98, 102-03, 377 P.3d 39, 43-44 (App. 2016) (quoting In re Lock, 109 Hawaiʻi at 151-52, 123

P.3d at 1246-47).  "[I]n construing a trust document to determine the settlor's intent, the instrument must be read as a whole, not in fragments."  Will of Damon, 76 Hawaiʻi at 124, 869 P.2d at 1343 (citing In re Lopez, 64 Haw. 44, 49, 636 P.2d 731, 735 (1981)).

With respect to the power to amend the Trust, the original Trust Instrument contains two provisions, which state, in pertinent part:

> 2.03.  Revocation and Amendment During Lifetime of Both Grantors.  During the lifetime of both Grantors, the Grantors, acting jointly, reserve the right to revoke and/or amend this agreement at any time by an instrument in writing, signed by each Grantor, acknowledged before a notary public and delivered to the Trustee. . . . .
>
> 2.04.  Revocation and Amendment After Death of One Grantor.  After the death of one of the Grantors, **the surviving Grantor shall have the right to revoke or amend the entire trust agreement at any time** by an instrument in writing, signed by the surviving Grantor, acknowledged before a notary public and delivered to the Trustee; PROVIDED, HOWEVER, that said surviving Grantor must first obtain the written consent of the Trustee.

(Emphasis added).

Article 2.04 of the Trust Instrument unambiguously confers upon the surviving Settlor the right to amend the Trust following the death of the other Settlor.  It is undisputed that none of the subsequent amendments explicitly deleted or modified this provision, notwithstanding that various other paragraphs in the Trust Instrument were specifically "deleted" and "substituted" by way of those amendments.  Thus, Article 2.04 remains in full effect and is clear in its application:  after either Mr. or Mrs. Lake has died, the surviving Settlor has the

right to amend the Trust at any time so long as the written consent of the Trustee is obtained first.

The Beneficiaries' argument that Paragraph G of the First Amendment impliedly removed this power from the surviving Settlor is unpersuasive, as Paragraph G does not concern those circumstances governed by Article 2.04.  In pertinent part, Paragraph G states:

> G.    POWER OVER PROPERTY.
>
> The powers reserved by the Trustors to revoke or amend this trust or to invade or withdraw principal, as to their undivided interests in the property, **are to be held by the Trustors during their joint lifetimes** in their capacity as managers of the property, subject to all restrictions imposed by law on their management by husband and wife of property. . . .
> Notwithstanding the foregoing, the power of the Trustee to exercise any of the discretionary powers conferred by this instrument shall not be limited in the event of the disability or incapacity of either or both Trustors.

(Emphasis added).

Paragraph G sets forth the power of the Settlors to amend the Trust jointly while they are both alive.  However, it is not the trust provision that describes the power, or the lack of power, of a surviving Settlor to amend the Trust following the death of the other Settlor.  Nothing in this paragraph indicates the Lakes' intent to modify the plain and unambiguous language of Article 2.04, which independently reserves to the surviving Settlor the right to amend or revoke the Trust after the death of the other.

Additionally, we cannot conclude that Mr. and Mrs. Lake intended to eliminate the surviving spouse's power to amend the

Trust on the basis that an adverse tax consequence might have eventually resulted.  The Beneficiaries assert that "[t]he tax-saving strategy of the First Amendment relies on restricting the power that the surviving spouse can have over the trust."  They contend that if Mrs. Lake were to retain the power to amend the trust after Mr. Lake's death, then all of the assets in the Trust, including Mr. Lake's one-half interest, would be included in the surviving spouse's estate upon his or her later death "and the estate tax exemption of the first spouse to die would have been wasted," which could not have been the Lakes' intent.  See 26 U.S.C.A. § 2038(a) (Westlaw, through Pub. L. No. 94-455).[10]

Although the First Amendment suggests that Mr. and Mrs. Lake were cognizant of certain then-existing tax-saving strategies, we cannot conclude that they necessarily intended to eliminate the surviving Settlor's power to amend the Trust in

---

[10]     26 U.S.C.A. § 2038(a) states:

> **(a) In general.**--The value of the gross estate shall include the value of all property--
>
> > **(1) Transfers after June 22, 1936.**--To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration of money or money's worth), by trust or otherwise, **where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power** (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), **to alter, amend, revoke, or terminate,** or where any such power is relinquished during the 3-year period ending on the date of the decedent's death.

(Emphasis added).

order to effectuate these strategies.  The Beneficiaries correctly recognize that the First Amendment provided for the creation of a Survivor's Trust and a Decedent's Trust, seemingly in order to exclude certain trust property from the value of Mrs. Lake's gross estate.  However, the subsequent amendments to the Trust Instrument altered the property that was to comprise these trusts and evidenced an intent to allow for further amendment, without reference to whether both Settlors were still alive. Specifically, the Third Amendment (the final amendment before Mr. Lake's death) provided that the Survivor's Trust "shall be determined and distributed in accordance with our [2014 Guide to Disposing of Assets], which is dated September 10, 2014 and attached hereto, as Exhibit '1', <u>as may be amended from time to time</u>."  (Emphasis added).  Similarly, with respect to the Decedent's Trust, the Third Amendment provides that its "funds will be distributed pursuant to our revised letter of instructions [*i.e.*, the 2014 Guide to Disposing of Assets], . . . <u>as may be amended from time to time</u>."  (Emphasis added). Moreover, in the cover letter to the 2014 Guide to Disposing Assets, the Lakes expressed that they "would like to see the properties stay in the family if at all possible," but that "[t]o make that happen is another story with many variables, 'what if's', and the high property values" and that "[t]hese are guidelines only to convey our thoughts and deal with the circumstances presented at that time."

This language is consistent with the express provision granting to the surviving Settlor the power to amend or revoke the Trust after the death of the other, and there is no indication that the Lakes, through any of the subsequent amendments to the Trust Instrument, sought to eliminate this power of amendment and revocation. Thus, we conclude that, pursuant to Article 2.04 of the Trust Instrument, Mrs. Lake possesses the right to revoke or amend the Trust after the death of Mr. Lake, so long as she does so in the manner described in Article 2.04 and with the written consent of Cheryl. Accordingly, the Beneficiaries' first point of error is rejected.

C.   Bob's Agreement with the Trust

The Beneficiaries contend the Circuit Court was wrong to conclude that there was no valid contract between Bob and the Trust. The Beneficiaries argue that the agreement was validly formed and is enforceable notwithstanding the Statute of Frauds. Specifically, they argue that: (1) all the elements for formation of a valid contract were met; (2) the purpose of the Statute of Frauds is to prevent false claims to land, and Mrs. Lake has acknowledged the existence of the agreement; (3) Bob has partly performed on the purported contract, which removes it from the Statute of Frauds; and (4) even if it falls within the statute and a writing is required, the 2011 and 2014 Guides to Disposing Assets satisfy the statute's requirements.

"[I]n order for an oral contract to be enforceable, there must be an offer, an acceptance, and consideration." Douglass v. Pflueger Haw., Inc., 110 Hawaiʻi 520, 525, 135 P.3d 129, 134 (2006) (citation omitted).  "It is a fundamental principle of law that there must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract."  Carson v. Saito, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971) (quoting Honolulu Rapid Transit v. Paschoal, 51 Haw. 19, 26-27, 449 P.2d 123, 127 (1968)) (internal quotation marks omitted).  "Whether or not the parties entered into an agreement is essentially a question of fact."  Island Directory Co. v. Iva's Kinimaka Enters., Inc., 10 Haw. App. 15, 23, 859 P.2d 935, 940 (1993) (citations omitted).

Here it is not readily apparent whether the Circuit Court's determination that "there is no valid contract between the Trust and Bob," was a finding of fact that no contract was ever formed or that a contract, if formed, was not enforceable on some other basis as a matter of law.  Based on the arguments of the parties, it appears that it remains a disputed issue of fact as to whether an agreement existed between Bob and Mr. Lake, as Trustee.  In any event, the parties' arguments raise the issue of whether the oral contract, if it existed and was validly formed, was unenforceable for its failure to comply with the Statute of

Frauds, which is a legal conclusion this court reviews *de novo*.[11] See Nelson v. Boone, 78 Hawaiʻi 76, 80, 890 P.2d 313, 317 (1995).

"[I]t is well settled that '[a] contract need not be in writing unless a statute requires it.  Conversely, an oral or parol contract is unenforceable where a statute requires it to be in writing.'" Credit Assocs. of Maui, Ltd. v. Carlbom, 98 Hawaiʻi 462, 467, 50 P.3d 431, 436 (App. 2002) (quoting 17A Am. Jur. 2d. Contracts § 181 (1991)).  Pursuant to the Hawaiʻi Statute of Frauds, a writing is required for contracts "for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them."  See Hawaii Revised Statutes (**HRS**) § 656-1 (2016).[12]

The purported agreement in this case is alleged to have been made in or around October or November 2007 between Bob and Mr. Lake, in his capacity as Trustee, with the terms that "[Bob]

---

[11]    Also, because we conclude that the purported agreement does not comply with the Statute of Frauds, further proceedings are not necessary for the entry of factual findings with respect to the existence and formation of the alleged contract.

[12]    HRS § 656-1 provides, in pertinent part:

> **§ 656-1  Certain contracts, when actionable.**  No action shall be brought and maintained in any of the following cases:
> . . . .
>
> (4)    Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;
> . . . .
>
> unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized.

would pay $2,550 per month to the Trust in exchange for the right to occupy 46-251 Kalali Street while his parents were still living, and for the right to inherit 46-309 Kalali Street upon their passing."  The parties do not appear to dispute that the purported agreement would fall within the Statute of Frauds as a contract for an "interest in or concerning" land.

The Beneficiaries, however, assert that Mrs. Lake's statement in her Objection to Petition for Instructions – that Bob "at most . . . had an oral agreement to occupy [46-251 Kalali Street] for rent in the amount of $2,550 – removes it from the Statute of Frauds, because this statement indicates that it is not disputed that the contract existed and thus there is no potential for fraud in enforcing it.  In support, the Beneficiaries point to the proposition that the Statute of Frauds does not exist "to prevent performance of oral contracts that have in fact been made."  (Quoting Nelson, 78 Hawaiʻi at 81, 890 P.2d at 318).

Significantly, however, the Beneficiaries incorrectly state that the existence of the agreement and its terms are undisputed.  Mrs. Lake and Cheryl have not conceded the existence of the agreement as alleged, but have, at most, acknowledged the existence of an oral, month-to-month rental agreement for 46-251 Kalali Street.  They have only argued in the alternative that any agreement found to exist is unenforceable for failing to comply with the Statute of Frauds.  Thus, to the extent the

Beneficiaries contend that the Statute of Frauds should not apply on the basis that the existence of the agreement is undisputed, this argument is unavailing.

Moreover, the Beneficiaries construe too broadly the holding in Nelson with respect to the purpose of the Statute of Frauds.  In that case, the Hawaiʻi Supreme Court addressed the narrow issue of "[w]hether the Statute of Frauds bars specific performance of an otherwise enforceable written agreement for the sale of land, which is neither signed by the parties to be charged nor accompanied by a secondary writing that authorizes their attorney to bind his or her clients."  78 Hawaiʻi at 81, 890 P.2d at 318 (emphasis added).  The supreme court focused on the substantial evidence in the record of the attorney's actual or apparent authority to enter into the written agreement and that the record contained "a written agreement, and the paper trail, as well as other compelling evidence, establish[ing] the existence of an actual contract."  Id. at 81, 82, 890 P.2d at 318, 319.  In light of the particular circumstances of that case, the supreme court held that "the Statute of Frauds should not be inequitably applied to prevent the enforcement of otherwise valid oral contracts or even written agreements signed by agents without the written authorization of their principals."  Id. at 82, 890 P.2d at 319.  The court determined that even though strict application of the Statute of Frauds would require an independent writing authorizing the attorney to sign the

agreement on the appellees' behalf, the agreement was nonetheless enforceable "because the statute was not intended to allow parties to avoid the consequences of bargains fairly made."  Id. at 84, 890 P.2d at 321.

In contrast, the issue here is not simply whether a strict and technical application of the Statute of Frauds would undermine the fundamental purpose of the statute and prevent enforcement of "a bargain fairly made."  See id.  Here, the parties clearly dispute whether Mr. Lake, as Trustee, ever promised Bob a certain inheritance or a right to reside at a particular Trust property and whether a valid contract resulted therefrom.  Although the Beneficiaries assert that there is a purported memorandum of their agreement, here, there is no written contract or "other compelling evidence, establish[ing] the existence of an actual contract" as there was in Nelson.  78 Hawaiʻi at 81, 890 P.2d at 318.  Thus, the primary purpose of the Statute of Frauds — to require reliable evidence of the existence and terms of the contract and prevent enforcement of contracts never made — is implicated by the facts of this case, and the Beneficiaries' reliance on Nelson is misplaced.  See Restatement (Second) of Contracts § 131 (1981).

The Beneficiaries also argue that the Statute of Frauds is inapplicable to the purported agreement because (1) Mrs. Lake does not dispute that Bob has been partly performing on the agreement by paying $2,550 to the Trust every month for several

years, and (2) Bob "surrendered the opportunity to purchase [his] own home" in reliance on the agreement and in an effort to assist the Lakes in "effectuat[ing] their estate planning goals."

"'Performance or part performance of a contract required to be in writing will take the matter out of the statute of frauds, where the party seeking to enforce it has acted to his [or her] detriment in substantial reliance upon the oral agreement.'" Credit Assocs. of Maui, 98 Hawaiʻi at 469, 50 P.3d at 438 (quoting Shannon v. Waterhouse, 58 Haw. 4, 5-6, 563 P.2d 391, 393 (1977)).  Part performance must be established by clear and convincing evidence.  Boteilho v. Boteilho, 58 Haw. 40, 42, 564 P.2d 144, 146 (1977); Shannon, 58 Haw. at 6, 563 P.2d at 394.

> The doctrine of part performance "takes the case out of the statute not because it furnishes proof of the contract, or because it makes the contract any stronger, but because it would be intolerable in equity for the owner of a tract of land knowingly to suffer another to invest time, labor, and money in that land, upon the faith of a contract which did not exist."
>
> Generally, however, courts are reluctant to circumvent the requirements of the statute.  Consequently, courts require the part performance to be of a character which is unequivocally referable to the alleged parol agreement and cannot admit of explanation without reference to such agreement.  The acts constituting part performance "must clearly appear to have been done in pursuance of the contract, and to result from the contract and not from some other relation."

Rossiter v. Rossiter, 4 Haw. App. 333, 338-39, 666 P.2d 617, 621 (1983) (quoting 73 Am. Jur. 2d Statute of Frauds § 400 (1974) and citing 30 A.L.R.2d 1419, 1420-22 (1953)) (format altered); see also Perreira v. Perreira, 50 Haw. 641, 643, 447 P.2d 667, 668 (1968) ("The acts constituting part performance must be pursuant to the contract, with the knowledge and consent of the other

party, and must be such that to allow the other party to repudiate would be a fraud upon the plaintiff.") (citations omitted).

Here, Bob's actions in making payments to and on behalf of the Trust do not constitute part performance referring unequivocally to the alleged equalization agreement since they are equally referable to payments made in order to reside at 46-251 Kalali Street.[13] See Rossiter, 4 Haw. App. at 339-40, 666 P.2d at 621-22 (husband's acts that were "equally referable to his marital duties and to the use and possession of the premises as the marital dwelling" did not refer unequivocally to an alleged antenuptial agreement). It is undisputed that Bob resided at 46-251 Kalali Street and that 46-251 Kalali Street is a property owned by the Trust. We cannot conclude that Bob's act of making monthly payments of $2,550 to the Trust, on its own, was clearly "done in pursuance of the contract" such that the failure to enforce the alleged agreement would be "intolerable in equity."[14] See Rossiter, 4 Haw. App. at 338, 666 P.2d at 621 (citation omitted). Moreover, Bob's election not to purchase a family home of his own is not a basis for enforcement, since "the

---

[13] Moreover, while Mrs. Lake and Cheryl appear to agree that Bob has been paying $2,550 to the Trust each month, they plainly dispute that those payments were made in performance of the oral agreement alleged by the Beneficiaries.

[14] We recognize that the 2011 and 2014 Guides to Disposing of Assets refer to the $2,550 as monthly "Trust Note" payments. However, the focus with respect to the doctrine of part performance is whether the acts by the party seeking enforcement are unequivocally referable to the alleged parol agreement. Rossiter, 4 Haw. App. at 339, 666 P.2d at 621.

mere proof of forbearance is not evidence of part performance sufficient to remove a verbal agreement from the operation of the statute of frauds."  Shannon, 58 Haw. at 7, 563 P.2d at 394.

Alternatively, the Beneficiaries argue that even if the Statute of Frauds applies and a writing is required, the 2011 and 2014 Guides to Disposing Assets constitute sufficient writings to render the agreement enforceable.  To satisfy the Statute of Frauds, the contract itself need not be in writing; it is sufficient if there is some memorandum or note of it in writing, which is "signed by the party to be charged."  HRS § 656-1; Mossman v. Hawaiian Trust Co., 45 Haw. 1, 14, 361 P.2d 374, 381 (1961) (quoting Fishel v. Turner, 13 Haw. 392, 394 (Terr. 1901)). "[T]he writing need merely state with reasonable certainty the essential terms of the unperformed promises in the contract." Burgess v. Arita, 5 Haw. App. 581, 588, 704 P.2d 930, 936 (1985) (quoting Restatement (Second) of Contracts § 131 (1981)) (internal quotation marks omitted).  The court "should always be satisfied with 'some note or memorandum' that is adequate, when considered with the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence, to convince the court that there is no serious possibility of consummating a fraud by enforcement." Glockner v. Town, 42 Haw. 485, 486 (Terr. 1958) (quoting 2 A. Corbin, Corbin on Contracts § 498).  Separate writings may be considered together if by internal evidence they are shown to be

related in subject matter.  Waterhouse v. Capital Inv. Co., 44

Haw. 235, 244-45, 353 P.2d 1007, 1014 (1960).

Here, the Beneficiaries cite the chart included in the

2011 Guide to Disposing of Assets,[15] which displays the following

column:

**Bob**

```
46-309 Kalali St
   Trust Note
Effective Jan 2008

$2550. mo x 12 = $30,600 yr
   x 16 yrs = $489,000.

Est Mkt Value  $780,000.
16 yrs @ $2550 = $489,000.
Inheritance $290,000.

Note:
1. Pays Trust note $2550.  Until
   1 June 2023 (last payment)
2. Pays property tax

If circumstances occur where either Bob or Cheryl move to
309 Kalali with a surviving parent, either would need to
continue their respective payments, until 1 June 2023.
```

The Beneficiaries also reference the 2014 Guide to

Disposing of Assets, which states with reference to the

Survivor's Trust that "Bob is to inherit the 46-309 Kalali St.

property.  He continues to pay his note ($2550. per month) to the

Trust until June 1, 2023."

Taken together, the Guides support the existence of

some understanding between Bob and the Trust that Bob would pay

real property taxes plus $2,550 each month to the Trust until

---

[15]    Although superceded in its entirety by the 2014 Guide to Disposing
of Assets, the 2011 Guide to Disposing of Assets may still serve as evidence
of the purported agreement. See Restatement (Second) of Contracts § 131
(citing, in illustration, that where an oral contract is recited in a will
that is later revoked, the revoked will may be a sufficient memorandum to
charge the estate).

2023.  Additionally, the listed calculations suggest that these payments might serve to "equalize" an otherwise disproportionate inheritance that might result from his inheritance of 46-309 Kalali Street.  Nonetheless, we cannot conclude that the writings "state with reasonable certainty the essential terms of the unperformed promises in the contract."  Burgess, 5 Haw. App. at 588, 704 P.2d at 936.

As noted above, the alleged contract is that Bob would pay $2,550 until June 1, 2023, plus property taxes, as an "equalization agreement" in exchange for (1) the right to reside at 46-251 Kalali Street until the death of Mrs. Lake and (2) the right to inherit 46-309 Kalali Street upon her death.  First, there is plainly no reference in either Guide to the right to occupy 46-251 Kalali Street for any duration, and thus they could not constitute a memorandum of the complete agreement sufficient to satisfy the statute's requirement.  See Miller v. Pepper, 2 Haw. App. 629, 631 n.5, 638 P.2d 864, 866 n.5 (1982) (quoting 72 Am. Jur. 2d, Statute of Frauds, § 296 (1974) and citing Rose v. Parker, 4 Haw. 593, 598 (Haw. Kingdom 1882)) ("'A memorandum sufficient to satisfy the requirement of the statute of frauds must be complete in itself as to the parties to, and the essential terms of, the contract.  The memorandum cannot rest partly in writing and partly in parol; that is to say, a deficiency in the memorandum cannot be supplied by parol evidence.'").  Additionally, the writing does not address the

30

value of Bob's right to occupy 46-251 Kalali Street, or include such value in the "equalization" calculation, and thus the writing fails to state with reasonable certainty that Bob's payments to the Trust constituted inheritance equalization payments and guaranteed his right to occupy 46-251 Kalali Street.

Arguably, the writings could provide evidence that Mr. and Mrs. Lake intended at that time for Bob to inherit 46-309 Kalali Street, and that, if he did in fact receive title to 46-309 Kalali Street, his inheritance might need to be "equalized" by a certain amount in order to avoid a disproportionate inheritance.  However, the writings equally provide evidence that Bob's payments were simply "rents" to be collected by the Trust and distributed in accordance with the Guides, as amended from time to time.  In any event, the Guides do not serve as conclusive evidence of an "agreement" any more than they evince the intent of the Settlors to provide certain inheritances, if at all possible, and subject to possible amendment in order to effectuate these intended inheritances.  See Restatement (Second) of Contracts § 131 ("A memorandum must be sufficient to indicate that a contract has been made between the parties with respect to an identified subject matter or that the signer has offered such a contract to the other party.") (emphasis added).  Indeed, the Trust Instrument indicates that further amendments to the Trust (and, consequently, to the Guide to Disposing of Assets) might be warranted in the future, including for reasons relating to "high

property values" and that, as a result, it may not be possible "to see the properties stay in the family." See Glockner, 42 Haw. at 486 (the court considers "the admitted facts, surrounding circumstances, and all explanatory and corroborative and rebutting evidence" in addressing the sufficiency of the writing).  We cannot conclude that the 2011 and 2014 Guides to Disposing of Assets, even when taken together, state with reasonable certainty the complete and essential terms of the purported agreement.  Consequently, there does not exist a writing or memorandum sufficient to satisfy the Statute of Frauds in order to render the purported oral agreement enforceable.  Accordingly, the Beneficiaries' second point of error is rejected.

D.    Bob's Equitable Claims

Finally, the Beneficiaries contend that the Circuit Court erred in "summarily reject[ing] Bob's claims for equitable relief" without stating its reasons.  The Beneficiaries assert that because the denial of equitable relief is reviewed under the highly deferential abuse of discretion standard, the "failure to set out reasons is alone sufficient for this court to vacate the judgment and remand the case."  This argument lacks merit.

The Beneficiaries appear to assert that Bob's purported unjust enrichment of the Trust (if, despite his years of payments to the Trust, he is required to vacate 46-251 Kalali Street and does not inherit 46-309 Kalali Street) would warrant the

equitable remedy of restitution.  Theoretically, a claim for restitution may be established, notwithstanding noncompliance with the Statute of Frauds.  See Restatement (Third) of Restitution and Unjust Enrichment, § 31 ("A person who renders performance under an agreement that cannot be enforced against the recipient by reason of . . . the failure to satisfy an extrinsic requirement of enforceability such as the Statute of Frauds, has a claim in restitution against the recipient as necessary to prevent unjust enrichment."); see also Durette v. Aloha Plastic Recycling, Inc., 105 Haw. 490, 504, 100 P.3d 60, 74 (2004) ("[A] claim for unjust enrichment requires only that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust.") (citation, internal quotation marks, and brackets omitted).  Here, however, while the Beneficiaries summarily contended in their Petition for Instructions that the Trust would be unjustly enriched if Bob did not inherit 46-309 Kalali Street and was required to vacate 46-251 Kalali Street, the Beneficiaries do not appear to have presented any argument below in asserting a claim for restitution.  On appeal, the Beneficiaries fail to present any substantive argument with respect to the Circuit Court's rejection of the Beneficiaries' restitution claim, instead seeking relief based on the Circuit Court's lack of explanation of its ruling.  We conclude that the Beneficiaries have waived this point of error and, even if it

33

were not waived, have failed to establish grounds for disturbing the Circuit Court's decision.  See generally HRAP Rule 28(b)(7).

V.   CONCLUSION

For these reasons, we affirm the Circuit Court's June 5, 2017 Judgment and Order Denying Petition for Instructions and the Judgment and Order Granting Petition to Confirm Settlor's Right to Amend.

DATED:  Honolulu, Hawaiʻi, October 30, 2020.

On the briefs:

Douglas C. Smith,
Mark M. Murakami,
Joanna C. Zeigler,
(Damon Key Leong Kupchak
 Hastert),
for Appellants ROBERT A. LAKE,
CINDY L. BURT, and MONICA LAKE

Judy Y. Lee,
Edmund K. Saffery,
Lynda L. Arakawa,
(Goodsill Anderson Quinn &
 Stifel),
for Appellees THERESA PHYLLIS
LAKE and CHERYL L. PADEKEN

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge